**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PRINCE A.Z.K. ADEKOYA II, : | |
| : | Civil Action No. 08-3994 (KSH) |
| Plaintiff, : | |
| : | |
| v. : | **O P I N I O N** |
| : | |
| MICHAEL CHERTOFF, et al., : | |
| : | |
| Defendants. : | |

**APPEARANCES:**

Prince A.Z.K. Adekoya II, Pro Se
A # 097513560
Varick Federal Detention Facility
201 Varick Street, 4th Floor
New York, NY 10014

**HAYDEN**, District Judge

Plaintiff, an immigration detainee confined at the Varick Federal Detention Facility, New York, New York, brings this civil action alleging violations of his constitutional rights, pursuant to 42 U.S.C. § 1983. He has submitted an application to proceed with this action in forma pauperis, pursuant to 28 U.S.C. § 1915(e).

At this time, the Court must review the complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the

following reasons, the complaint must be dismissed, without prejudice.

## BACKGROUND

Plaintiff seeks to sue 21 defendants, including Department of Homeland Security ("DHS") directors and officers, and staff at the Bergen County Jail, for violations of his civil rights.

From the time period spanning May 23, 2008 to June 14, 2008, plaintiff, an immigration detainee, was housed at the Bergen County Jail in Hackensack, New Jersey. Plaintiff complains that while housed at the jail, he was not provided Muslim "Halal" meals, and thus, did not eat. Because he was not eating, he could not obtain medical treatment necessary for a hand injury-- he could not take medication without having eaten. Plaintiff also asserts that he was denied access to the law library. Thus, plaintiff repeatedly asked for a transfer to another facility, which was eventually granted.

More specifically, plaintiff seeks to sue the DHS defendants, arguing that they transferred him to an institution where he was "tortured, abused and deprived of [his] Constitutional rights." (Complt., pp. 6(a)-6(b)). When he asked one DHS defendant to transfer him out of Bergen County Jail, the officer refused stating that plaintiff was not cooperating in effectuating his removal. (Complt., p. 6(b)).

With regard to the Bergen County officers, plaintiff seeks to sue the Sheriff of Bergen County, the Undersheriff, the

Captain and two Lieutenants, arguing that they were aware of his issues and did not respond to his grievances.  (Complt., pp. 6(b)-6(d)).

Plaintiff also seeks to sue various officers at the Bergen County Jail, who he complained to, and who told him to take up his issues with DHS, Immigration and Customs Enforcement ("ICE") officials, since plaintiff was an ICE detainee, not a jail detainee.  These officers told plaintiff that they did not serve Halal meals.  Plaintiff states that the officers violated his constitutional rights by their "attitude and discrimination."  (Complt., pp. 6(d)-6(g)).

Plaintiff also names as defendants numerous officers and the jail nurse, who he states actually saw the condition of his hand, and knew that he was not being medically treated, and knew of his dietary issues.  Plaintiff also notes an issue with the law library, claiming that he was denied access even though he was in an immigration detainee with open cases in federal court.  (Complt., pp. 6(a), 6(g)-6(I)).

Plaintiff asks for monetary and other relief, stating that he will be handicapped for the rest of his life because he cannot use his right hand to work anymore.  He also states that he has had emotional distress and mental anguish.  (Complt., p. 7).

**DISCUSSION**

**A.   Standard for Sua Sponte Dismissal**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act ... many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. § 1915A, that a court must dismiss, at the earliest practicable time, actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions,

4

unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, ----, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to pass muster under the Rule 8 pleading standard.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  The Court of Appeals explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.  This "does not impose a probability requirement at the pleading stage[ ]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips, 515 F.3d at 234 (internal citations omitted).

**B.    Section 1983 and *Bivens* Actions**

Plaintiff's claims against the defendant state actors, have their jurisdictional basis under 42 U.S.C. § 1983.  Plaintiff's claims against the federal DHS/ICE officers have their jurisdictional basis under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Likewise, under <u>Bivens</u>, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment. In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.  The Supreme Court has also implied <u>Bivens</u> damages remedies directly under the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14 (1980), and the Fifth Amendment, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228 (1979).

In order to state a claim under <u>Bivens</u>, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  <u>See</u> <u>Mahoney v. Nat'l Org. For Women</u>, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing <u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149, 155-56 (1978)).

<u>Bivens</u> actions are analogous to suits under 42 U.S.C. § 1983 against state officials who violate federal constitutional or statutory rights.  The two bodies of law are not "precisely parallel;" however, there is a "general trend" to incorporate § 1983 law into <u>Bivens</u> suits.  <u>See</u> <u>Egervary v. Rooney</u>, 80 F. Supp. 2d 491 (E.D. Pa. 2000) (citing <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987)).

**C.     Plaintiff's Complaint Will Be Dismissed.**

Plaintiff has not stated a claim sufficient to withstand sua sponte screening.

### 1.     Halal meals

First, liberally construing the complaint, plaintiff asserts a First Amendment freedom of religion claim, and a Fourteenth Amendment equal protection claim in that he repeatedly states that he was not provided Halal meals during his time at the Bergen County Jail.  However, the very claim presented in plaintiff's complaint -that the constitution requires the defendants to provide him with Halal meat meals- was addressed and conclusively rejected by the Court of Appeals in Williams v. Morton, 343 F.3d 212 (3d Cir. 2003).  The plaintiffs in Williams were Muslim inmates who filed a 42 U.S.C. § 1983 action alleging that the defendant prison officials violated the plaintiffs' federal and state constitutional rights and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 et seq., by providing the plaintiffs with vegetarian meals rather than meals with Halal meat.  The Court of Appeals agreed with the District Court that the decision of the Department of Corrections to provide vegetarian meals to religious Muslim inmates (rather than Halal meals with meat) was rationally related to the legitimate penological interests in simplified food service, security, and staying within the prison's budget.  The Court of Appeals noted

8

that the Free Exercise aspect of the plaintiffs' claim was assessed in light of the facts that Muslim inmates were provided with the opportunity to pray daily, attend special weekly services, and observe religious holidays. Turning to the equal protection aspect, the Court of Appeals concluded that the plaintiffs failed in their claim because there was no evidence that the Kosher meals provided to Jewish inmates contained meat.

Here, as with the plaintiffs in <u>Williams</u>, plaintiff does not assert that he is denied the opportunity to pray daily, attend special weekly services, and observe religious holidays. Similarly, plaintiff does not assert that Jewish inmates are provided with Kosher meals or meats. Plaintiff does not state that he was denied vegetarian meals. Absent a different claim legally or factually, there is no basis for this court to allow this plaintiff to retry this rejected theory. <u>Williams</u>, 343 F.3d at 219 (decision of Department of Corrections to provide vegetarian meals (rather than Halal meals with meat) rationally related to legitimate penological interests). In sum, plaintiff's liberally construed allegations that his First and Fourteenth Amendments rights were violated because he did not receive Halal meals fails to state a cognizable claim.

However, this Court will allow plaintiff the opportunity to present an amended complaint to cure its shortcomings if he can-and submit an amended pleading detailing the facts

9

indicating, in light of the constitutional analyses provided by the Court of Appeals in <u>Williams</u>, that plaintiff's civil rights have been violated by being denied Halal meals.

**2.    Library Access Claim**

Next, plaintiff's cursory claim that he has been denied access to the law library also fails to state a claim upon which relief may be granted.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  <u>See</u> <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  <u>See</u> <u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989); <u>see</u> <u>also</u> <u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts).

In <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by

10

providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).

>   Additionally:
>
>   Bounds did not create an abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.... [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint.

Lewis, 518 U.S. at 351.

Thus, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent

"actual injury." See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, plaintiff has not alleged that he sought to pursue the type of case protected by the constitutional right of access to the courts; nor has he alleged "actual injury." Thus, he has failed to state a claim for denial of his constitutional right of access to the courts. Again, the dismissal will be without prejudice to the plaintiff filing an amended complaint in order to correct the deficiencies of his claims, in accordance with the attached order.

### 3. **Medical Care Claim**

Plaintiff asserts that because he was not able to take his medication due to not "being fed" Halal meals, that his medical condition concerning his right hand was left untreated, and resulted in a handicap.

As to plaintiff's medical care claims, the Fourteenth Amendment Due Process Clause applies, as plaintiff is a pretrial detainee. Thus, "the proper standard for examining such claims is the standard set forth in Bell v. Wolfish . . .; i.e., whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt . . . ." Montgomery v. Ray, 145 Fed. Appx. 738, 740, 2005 WL 1995084 (3d Cir. 2005) (unpubl.)(citing Bell v. Wolfish, 441

U.S. 520 (1979); <u>Hubbard v. Taylor</u>, 399 F.3d 150, 166 (3d Cir. 2005)).  In <u>Bell</u>, the United States Supreme Court explained:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...

441 U.S. at 535-39 (citations omitted).

In this case, plaintiff has alleged no facts indicating that he is being subjected to punishment as a pretrial detainee.  He states only that while housed at the Bergen County Jail, he had medical issues with his right hand.  He conveys that he was offered treatment in the form of medication, but that he was not able to take the medicine because he was not eating, which would cause side effects.  (Complt., p. 6(h)).  Thus, it appears to this Court from the facts alleged in the complaint that plaintiff suffered an ailment and was offered treatment.  Any refusal of treatment appears to be based on plaintiff's choices.

However, again, the dismissal of plaintiff's medical care claims will be without prejudice to the plaintiff filing an amended complaint in order to correct the deficiencies of his claims, in accordance with the attached Order.

13

### 4. Respondeat Superior

Plaintiff should note that if he desires to file an amended complaint, he should only name defendants with direct involvement in the alleged violations. Local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

### CONCLUSION

For the reasons set forth above, all claims are subject to dismissal, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may

be granted.[1]  However, because it is conceivable that plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted in this opinion, the Court will grant plaintiff leave to reopen and file an amended complaint.[2]  An appropriate order follows.

       /s/Katharine S. Hayden
KATHARINE S. HAYDEN
United States District Judge

Dated: 3/4/09

---

[1] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ... The dispositive inquiry is whether the district court's order finally resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if plaintiff can correct the deficiencies of his complaint, he may file a motion to reopen these claims in accordance with the court rules.

[2] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. See id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself. See id.